

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

GEORGE H. SEITZ,

    Plaintiff,

v.

FEDERAL NATIONAL
MORTGAGE ASSOCIATION,
<u>et</u> <u>al.</u>,

    Defendants.

Civil Action No. 3:12cv633

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff George H. Seitz's ("Seitz") MOTION TO REMAND (Docket No. 19). For the reasons set forth below, the motion will be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

This action concerns a piece of real property located in the County of Hanover, Commonwealth of Virginia, known as 16297 Washington Highway, Doswell, Virginia 23047. On June 9, 2008,[1] Seitz entered into a mortgage loan with Defendant Flagstar Bank, FSB ("Flagstar") which was duly recorded. What happened next is

---

[1] There appears to be a dispute over the date that the note was signed. Seitz claims that it was January 9, 2008. <u>See</u> Compl. ¶ 6. The defendants claim that the note was signed on June 9, 2008. <u>See</u> Def's Mem. in Supp. of Mot. to Dismiss (Docket No. 11) at 3. The note itself appears to have been signed in June, <u>see</u> Compl. Ex. A, but the actual date of the signing is immaterial to the issue of remand.

the crux of the underlying dispute between the parties, but, for present purposes, it suffices to say that, in April 2010, Flagstar appointed Defendant Samuel I. White, P.C. ("White") as trustee and began the foreclosure process. On May 3, 2011, White conducted a foreclosure sale in which Flagstar submitted the highest bid. On July 25, 2011, Flagstar executed a trustee's deed which purported to convey the property to Defendant Federal National Mortgage Association ("Fannie Mae"), which was recorded.

On September 30, 2011, Fannie Mae filed an unlawful detainer action against Seitz in the Hanover County General District Court, No. GV11-2904. The General District Court entered a judgment against Seitz and in favor of Fannie Mae. On November 4, 2011, Seitz timely appealed the case to the Circuit Court of Hanover County, No. CL11-1804.

On June 7, 2012, while the unlawful detainer action was pending before the Circuit Court of Hanover County, Seitz filed an action in that court against Fannie Mae and Flagstar Bank. That suit was filed as a suit to quiet title and, in it, Seitz alleged that the defendants had failed to comply with several of the pre-foreclosure requirements set forth in the Deed of Trust. The Complaint prayed the court to award Seitz compensatory damages in the amount of $50,000 and for an Order "quieting

Seitz' [sic] title to ownership of the home." Compl. ¶ 44 in CL12-1110.

On May 25, 2012, the Circuit Court denied Fannie Mae's motion for summary judgment and its motion in limine, and, after Seitz withdrew his demand for a jury trial, the case was set for a bench trial on June 14, 2012. Pl. Mem. in Supp. (Docket No. 20) Ex. B. Seitz moved to consolidate for trial the unlawful detainer action and the quiet title action and the Circuit Court of Hanover County granted that motion on June 12, 2012. Pl. Mem. in Supp. Ex. A. On August 30, 2012, the defendants filed their Notice of Removal, removing the "quiet title" action to this Court (Docket No. 1). On September 26, 2012, Seitz filed his Motion to Remand (Docket No. 19).

## LEGAL STANDARD

At issue in this action is the so-called "prior exclusive jurisdiction doctrine." Applying the doctrine here resolves the motion to remand.

It is well-settled that, generally speaking, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." McClellan v. Carland, 217 U.S. 268, 282 (1910). However, it is similarly well-settled that, "when one court is exercising in rem jurisdiction over a res, a second court will

not assume _in rem_ jurisdiction over the same _res_." Marshall v.

Marshall, 547 U.S. 293, 311 (2006). The Supreme Court of the

United States has explained:

> Where the action is in rem the effect is to
> draw to the federal court the possession or
> control, actual or potential, of the res,
> and the exercise by the state court of
> jurisdiction over the same res necessarily
> impairs, and may defeat, the jurisdiction of
> the federal court already attached. The
> converse of the rule is equally true, that
> where the jurisdiction of the state court
> has first attached, the federal court is
> precluded from exercising its jurisdiction
> over the same res to defeat or impair the
> state court's jurisdiction.

Kline v. Burke Const. Co., 260 U.S. 226, 229 (1922); see also

City of Orangeburg v. So. Ry. Co., 134 F.2d 890, 892 (4th Cir.

1948) ("[T]he court, state or federal, which first acquires

jurisdiction of the subject matter of a suit in rem holds it to

the exclusion of any other court until its duty is fully

performed."). The purpose of this rule is to prevent two courts

from issuing contradictory and incompatible rulings regarding

the same _res_.

As the Supreme Court explained long ago:

> It is a doctrine of law too long established
> to require a citation of authorities, that,
> where a court has jurisdiction, it has a
> right to decide every question which occurs
> in the cause, and whether its decision be
> correct or otherwise, its judgment, till
> reversed, is regarded as binding in every
> other court; and that, where the
> jurisdiction of a court, and the right of a

> plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. These rules have their foundation, not merely in comity, but on necessity. For if one may enjoin, the other may retort by injunction, and thus the parties be without remedy; being liable to a process for contempt in one, if they date [sic] to proceed in the other. Neither can one take property from the custody of the other by replevin or any other process, for this would produce a conflict extremely embarrassing to the administration of justice.

Peck v. Jenness, 48 U.S. 612, 624-25 (1849). Accordingly, "where the judgment sought is strictly in personam . . . both a state court and a federal court having concurrent jurisdiction may proceed with the litigation." Penn Gen. Casualty Co. v. Pennsylvania, 294 U.S. 189, 195 (1935).

However, "if the two suits are in rem or quasi in rem, requiring that the court or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other." Id. This rule has been described as a principle of jurisdiction, see e.g. Palmer v. Texas, 212 U.S. 118, 125 (1909) (describing the rule as removing jurisdiction from the federal court "as if the property had been entirely removed to the territory of another sovereignty"). It also has been said to be a rule of comity, see e.g. Metro. Finance Corp. v. Wood, 175

F.2d 209, 210 (9th Cir. 1949) (describing the rule as "one of necessitous comity"). Whatever the basis, it is clear that the rule is viewed as "a principle of right and of law, and therefore of necessity. It leaves nothing to discretion or mere convenience." Covell v. Heyman, 111 U.S. 176, 182 (1884). Therefore, if the state court has exercised its jurisdiction, in an in rem or quasi in rem action, over the res at issue here, any attempt by this Court to exercise jurisdiction over that same res is "futile and void." Id.

The parties agree that, because this action was removed to this Court under the provisions of 28 U.S.C. § 1332(a)(3), the Court must apply Virginia law to determine the nature of the two actions. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). The Supreme Court of Virginia has drawn the distinction between in rem and in personam actions in this manner:

> Actions in personam and actions in rem differ in that the former are directed against specific persons and seek personal judgments, while the latter are directed against the thing or property or status of a person and seek judgments with respect thereto as against the world.

O'Hara v. Pittston Co., 42 S.E.2d 269, 275 (Va. 1947). "An action is in personam when its object is to obtain a personal judgment against the defendant, upon which a general execution may be awarded directing the collection of the judgment out of any property of the defendant anywhere to be found. It is in rem

when it seeks to affect particular portions of his property
only." Id. Further, "in a quasi in rem proceeding the direct
object is to reach and dispose of property, or some interest
therein, owned by the defendant." Id. The primary distinction
between an action quasi in rem and actions in rem is that:

> A judgment quasi in rem, like a judgment in
> rem, affects interests in a thing; but
> unlike a judgment in rem it affects the
> interests of only particular persons in the
> thing and not the interests of all persons
> in the thing. It differs from a personal
> judgment in that it does not impose a
> personal liability or obligation upon
> anyone.

Restatement (Second) of Conflict of Laws, ch.3, intro. note
(1971).

These principles guide the analysis and resolution of the
motion to remand.

## DISCUSSION

There is no dispute among the parties over the requirements
of the "prior exclusive jurisdiction" doctrine. In order for the
doctrine to apply, and for the Court to be without jurisdiction,
all of the following must be true: (1) the state action must be
an action in rem or quasi in rem; (2) the federal action must be
in rem or quasi in rem, under the law of the forum state; and
(3) the state action must have commenced prior to the federal
action and proceeded to a degree sufficient to cause the state
court to have asserted jurisdiction over the res. There is no

real dispute that, in this case, the state court action commenced first such that, if the other two conditions are satisfied, the doctrine would apply here.

This Court's jurisdiction, then, turns on whether the present action and the action currently pending in the state court are in rem or in personam actions. As the United States Court of Appeals for the Ninth Circuit observed, in a case with facts strikingly similar to this one, "if both the Unlawful Detainer Action and the Quiet Title Action are characterized as in rem or quasi in rem, the prior exclusive jurisdiction doctrine applies." Chapman v. Deutsche Bank Nat'l Trust Co., 651 F.3d 1039, 1045 (9th Cir. 2011).

The actions at issue here are an action for Unlawful Detainer and a suit to Quiet Title.[2] Under Virginia law, Unlawful Detainer is "purely a statutory action." Daily v. Rucker, 144 S.E. 466, 467 (Va. 1928), authorized by Va. Code §§ 8.01-124 and 8.01-126. Courts have observed that the purpose of an unlawful detainer action is "merely to restore the possession to one from whom it has been forcibly taken, or to give possession to one from whom it is being unlawfully withheld. The judgment has only the effect of placing the parties in statu [sic] quo." Shorter

---

[2]  The defendants dispute the characterization of the second action as a "quiet title" action alleging that it is really a breach of contract action that the plaintiff has mislabeled. See Def. White Mem. in Opp. at 1; Def. Flagstar Mem. in Opp. at 11. This contention will be addressed below.

v. Sheldon, 33 S.E.2d 643, 647 (Va. 1945). A decision in an Unlawful Detainer action only resolves "whether the plaintiff is entitled to possession as against the defendant." 8B Michie's Jurisprudence Forcible Entry and Detainer § 2 (2011).

In contrast, in a quiet title action, "plaintiff asks the court to declare that he has good title to the property in question and compels any adverse claimant to prove a competing ownership claim or forever be barred from asserting it." Maine v. Adams, 672 S.E.2d 862, 866 (Va. 2009). The action is premised on the belief that "it is inequitable that a party in possession with a good title should be embarrassed by having a hostile claim outstanding against his property, which, although not actively asserted, and not of any validity, is nevertheless calculated to affect the marketability of the title." Neff v. Ryman, 42 S.E. 314, 315 (Va. 1902).

## A.   The Nature of the "Unlawful Detainer" Action in the State Court: An Action In Rem or Quasi In Rem

The defendants assert that, under Virginia law, an "unlawful detainer" action is in personam, relying on the point that "unlawful detainer actions do not address, and have no bearing upon, title to the property." Flagstar Opp. at 8. In response, Seitz argues that, because an unlawful detainer action adjudicates the right to possession, and because possession is an interest in real property, that an unlawful detainer action

9

concerns the title or, at least, concerns an interest in the property. Pl. Reply at 3-4.

As the briefs make clear, the nature of an unlawful detainer action varies depending on differences in applicable state law. See e.g. Hepburn & Dudas's Heirs v. Dunlop & Co., 14 U.S. (1 Wheat.) 179, 203 n.d (1816) (commenting in _dictum_ that "in real actions and ejectment," the "proceedings are in rem"); Kneafler v. Mack, 680 F.2d 671, 676 (9th Cir. 1982) (holding that "the ejectment claims at issue here are in personam actions under Hawaii law" because they are brought "merely to determine the right to possession as between [the plaintiff] and another"); United States v. Fairway Capital Corp., 483 F.3d 34, 40 (1st Cir. 2007) (finding that an action brought to adjudicate possession was "quasi in rem").

## 1. The Effect of _Pannill v. Coles_

Seitz relies on Pannill v. Coles, 1886 WL 2933, 81 Va. 380 (1886), wherein the Supreme Court of Appeals of Virginia[3] was asked to determine whether it had jurisdiction over an unlawful detainer action under the Virginia Constitution which instructed that the Supreme Court of Appeals "shall not have jurisdiction in civil cases where the amount in controversy, exclusive of costs, is less in value or amount than five hundred dollars,

---

[3] Until 1970, Virginia's highest court was known as the "Supreme Court of Appeals of Virginia." Since it has been called the "Supreme Court of Virginia."

10

except in controversies concerning the title or boundaries of land," and other limited exceptions. 1886 WL 2933 at *2. It was undisputed in Pannill that the amount in controversy was not sufficient to confer jurisdiction. Therefore, the case turned on whether the unlawful detainer action was a controversy "concerning the title" of land, an issue which Virginia's highest court resolved by holding that:

> The question to be determined in such case [i.e., in an unlawful detainer action] is the right of possession, and to this end the question of the complete title is not the question to be determined; and to maintain the action the plaintiff need not have the complete title. <u>A question may not involve the complete title, and yet it may be a question concerning the title; and if any element of the complete title is involved, the case would come within the constitutional provision concerning the title or boundaries of land</u>.

<u>Id.</u> (emphasis added).

The rationale for the decision in Pannill is drawn from rather settled principles of real property jurisprudence. The court noted, "we cannot better in construing this language . . . than to recur to first principles." <u>Id</u>. For example, <u>Pannill</u> quoted, approvingly, from Judge Lomax's <u>Digest</u> on the title to real property, which explained that "it is to be known that there is <u>jus proprietatis</u>, a right of ownership, <u>jus possessionis</u>, a right of <u>seisin</u> or possession, and <u>jus proprietatis et possessionis</u>, a right both of property and

11

possession, and this is anciently called <u>jus duplicatum</u> or <u>droit droit</u>." <u>Id.</u> (internal quotations omitted).

The decision in <u>Pannill</u> also, approvingly, cited to William Blackstone's <u>Commentaries on the Laws of England</u> on the nature of title to land. <u>Id.</u> at *2-3.[4] Blackstone instructs that there are four "degrees" of title: (1) "naked possession," (2) "right of possession," (3) "mere right of property," and (4) "complete title" in which "the right of possession be joined with the right of property." 2 William Blackstone, <u>Commentaries</u> 195-99. Blackstone observed,

> I. The lowest and most imperfect degree of title consists in the mere naked possession or actual occupation of the estate, without any apparent right or any shadow or pretence of right to hold or continue such possession. . . . But in the mean time, till some act be done by the rightful owner to divest this possession and assert his title, such actual possession is, prima facie, evidence of a legal title in the possessor.
>
> II. The next step to a good and perfect title is the <u>right of possession</u>, which may reside in one man while the actual possession is either in himself or in another. For if a man be disseized, or otherwise kept out of possession, . . . though the actual possession be lost, yet he has still remaining in him the right of possession. . . .

---

[4] The Blackstone analysis is also adopted, <u>verbatim</u>, by Henry Tucker in his discussion of "the Title to Things Real in General" in Virginia. 2 Henry St. George Tucker, <u>Commentaries on the Laws of Virginia</u> 178-80 (1846).

> III. The mere right of property, the _jus
> proprietatis_, without either possession even
> or the right of possession. . . . A person
> in this situation may have the true ultimate
> property of the lands in himself: but by the
> intervention of certain circumstances,
> either by his own negligence, the solemn act
> of an ancestor, or the determination of a
> court of justice, the presumptive evidence
> of that right is strongly in favor of his
> antagonist; who has thereby obtained the
> absolute right of possession. . . .

> IV. A complete title to lands, tenements,
> and hereditaments. For it is an ancient
> maxim of the law, that no title is
> completely good, unless the right of
> possession be joined with the right of
> property; which right is then denominated a
> double right, _jus duplicatum_, or _droit
> droit_. And when, to this double right the
> actual possession is also united there is,
> according to the expression of Fleta, _juris
> et seisinae conjunctio_, there and then only
> is the title completely legal.

_Id._ Blackstone illustrates the interaction between the differing

degrees of title thusly,

> [I]f a tenant in tail enfeoffs to A in fee
> simple, and dies, and B disseizes A; now B
> will have the possession, A the right of
> possession, and the issue in tail the right
> of property: A may recover the possession
> against B; and afterwards the issue in tail
> may evict A, and unites in himself the
> possession, the right of possession, and
> also the right of property.

_Id._ at 199.

Relying on these authorities, the _Pannill_ court concluded

that an unlawful detainer action "concerned" one element of

title, _i.e._, the right to possession, and that, therefore, it

13

was vested with jurisdiction to hear appeals from unlawful detainer actions. Pannill, 1886 WL 2933, at *3. The decision in Pannill does not squarely hold that an unlawful detainer action is either in rem or quasi in rem, but the rationale of the decision in Pannill teaches that the action would be considered an action quasi in rem under Virginia law.

## 2. An Historical Look at Unlawful Detainer in Virginia

Since at least 1789, Virginia has had in effect some statute designed to address unlawful entries on and detainers of real property. S. Ry. Co. v. Lima Wood & Coal Co., 159 S.E. 69, 70 (Va. 1931). The purpose of the unlawful detainer action is to "prevent breaches of the peace and bloodshed." Id. at 70. The statute was enacted to avoid situations in which the true owner of real property would take possession of it by force from a possessor who held a bona fide belief that he was entitled to the property. Id. The statute tells the owner "that you may not take what is yours by force, and if you do, what you have taken shall be returned to him from whom you took it." Id.

Unlawful detainer actions principally arise in landlord-tenant situations. Thus, an examination of the action as therein presented is useful in understanding how best to characterize it. Yet, the focus on the landlord, or new owner, violently seizing the property has served to shift the focus away from the unlawful detainer component of a suit for unlawful entry and

14

detainer. But, the Virginia statute plainly contemplates two, separate, scenarios: the first where a purported owner enters the property and takes it by force; and the second where one whose right to possession has expired, for whatever reason, remains on the property. See Va. Code § 8.01-124 (the unlawful detainer action is available for (1) "any forcible or unlawful entry be made upon lands" or (2) "if, when the entry is lawful and peaceable, the tenant shall detain the possession of land after the right has expired, without the consent of him who is entitled to the possession.") The emphasis, in many of the cases,[5] on the fact that the cause of action does not adjudicate title or right to possession, and merely restores the status quo is rather more applicable to the first scenario, where the true owner is being discouraged from exercising the common law right to retake his property with reasonable force, than in the detainer case.

    In an action for unlawful detainer, rather than for entry, then, a court must determine the lawfulness of the possessor's

_____

[5] See e.g. Seone v. Drum Emporium, Inc., 457 S.E.2d 93, 97 (Va. 1995) (the unlawful detainer action "had nothing to do with the title to the landlord's property"); Smith v. Ware, 421 S.E.2d 444, 445 (Va. 1992) ("Judgment [in an unlawful detainer action] only restores the status quo of the parties, and settles nothing as to the title or right of possession."); Town of Grundy v. Goff, 60 S.E.2d 273, 277 (Va. 1950) (same); Elliott v. United Realty Corp., 130 S.E. 802, 803 (Va. 1925) (Unlawful detainer action "altogether to the possession of the real estate and not to the title").

claim of possession as to the plaintiff. And, the Supreme Court of Appeals of Virginia has held that: "[i]f the defendant entered upon the land of the plaintiff unlawfully, the plaintiff is entitled to recover the possession of the land without any regard to the right of possession. Her actual possession gave her the right of possession against any person not having a right of entry." Fore v. Campbell, 1 S.E. 180, 182 (Va. 1887). This strongly suggests that, when the courts indicate that an unlawful detainer action does not adjudicate title or possession, what that means is that the court does not adjudicate an absolute right to possession, merely the right of the possession of the plaintiff as to the rights of the defendant. Thus, generally speaking, in an unlawful detainer action, the court is largely confined to a determination within Blackstone's first and second "degrees" of title. Simply, the action is designed to avoid situations in which a party is able to rely on "[his] strong possession much more than [his] right."[6] Indeed, the Supreme Court of Appeals of Virginia has noted, in the landlord-tenant context, that "the object of unlawful detainer is to try the right of possession." Gale v. Trust Co. of Norfolk, 128 S.E. 643, 643 (Va. 1925).

Indeed, the concept that, in an unlawful detainer action, a court is required to determine the defendant's right of

---

[6] William Shakespeare, History of King John act 1, sc. 1.

possession as compared to the plaintiff's is further supported by two cases dealing with unlawful detainer actions in the context of oyster grounds. In Means v. Dexter, the Supreme Court of Appeals of Virginia addressed an "action of unlawful entry and detainer" brought to "recover certain oyster grounds which . . . were assigned to the plaintiff by . . . [the] oyster inspector for the said county." 11 S.E. 538, 538 (Va. 1890). There, the court observed that,

> The plaintiff was in actual possession when the defendants entered; and, that entry being unlawful, he is entitled to recover. The remedy for a forcible or unlawful entry or detainer was designed to protect the actual possession, whether rightful or wrongful, against unlawful invasion, and to afford summary redress and restitution.

Id. at 540. The court rejected the defendants' claim that the plaintiff lacked the right to possession, due to a failure to pay rent, noting "any possession . . . is a legal possession against a wrongdoer." Id.

Similarly, in Power & Kellogg v. Tazewells, the Supreme Court of Appeals had previously addressed an action involving the right to possession of an oyster bed. 66 Va. (25 Gratt.) 786 (1875). In addressing the unlawful detainer action, the court observed that "[t]he whole case then turns upon the question, had they an exclusive right to the use and occupancy of the premises when the summons was issued in this case." Id. at 789.

17

The court went on to instruct that "the defendants' entry and withholding the possession of the premises was not unlawful, unless the plaintiffs below had acquired the exclusive right to their use and occupancy, or had not lost their right to the priority." Id. at 790.

### 3. In rem or quasi in rem

Under Virginia law, an action is quasi in rem when in the "proceeding the direct object is to reach and dispose of property, or some interest therein." O'Hara, 42 S.E.2d at 275. An unlawful detainer action "requires the court to determine whether the possession is rightful or wrongful as against the unlawful invasion." In re Cherokee Corp., 222 B.R. 286 (E.D. Va. 1998). Moreover, "[t]he controversy in such a case, though it determines only the right of possession, may turn altogether upon the validity of the title under which the defendant claims to hold the possession." Corbett v. Nutt, 59 Va. (18 Gratt.) 624, 648 (1868). And, possession "concerns" title and is a degree of interest in real property.

Thus, under Virginia law, although a court, in an unlawful detainer case, may not "try the title" in the sense of determining who, as against all others, has title to the property, it is permitted to adjudicate issues concerning title, at least, insofar as those issues bear on the right to

possession as between the parties to the unlawful detainer action.

In fact, in this particular case, Seitz has asserted, as a defense, that the foreclosure was invalid and that, therefore, he is entitled to possession. Pl. Reply at 3. And, to decide that issue, the state court will need to address questions concerning title, and the right to possess, the property at issue. At oral argument, it was represented by Seitz's counsel, without refutation, that the circuit court's decisions rejecting Fannie Mae's motion for summary judgment and motion in limine in this case would have that precise result. Thus, this is a clear example of a case in which the unlawful detainer action "turns . . . upon the validity of the title" to the property. Corbett, 1868 WL 48 at *14. In the unlawful detainer action, the court is being asked to determine Setiz's interest in possession of the property as it relates to the defendants and, indeed, Seitz has been permitted by the state court to try the question of title as part of an affirmative defense.

For the foregoing reasons, it would appear that, under Virginia law, the unlawful detainer action currently pending in the Circuit Court for Hanover County should be considered an action quasi in rem.

19

**B.    The Nature of the Action Removed to this Court: The Quiet Title Action**

The Notice of Removal (Docket No. 1) removed the quiet title action. At oral argument, counsel for Fannie Mae and Flagstar represented that, at the time of removal, he was unaware of the unlawful detainer action or that it had been consolidated with the quiet title action.

The Court accepts as true that the current counsel for Fannie Mae and Flagstar did not have that knowledge.[7] However, Fannie Mae, having instituted the unlawful detainer action, certainly knew about it, and was represented by counsel at proceedings in the unlawful detainer action and in the motion to consolidate the two actions. At oral argument, current counsel represented that he would also have removed the unlawful detainer action if he had known about it.

The defendants take the view that a quiet title action is an in personam action and that, therefore, the prior exclusive jurisdiction doctrine is not applicable. Seitz contends that the quiet title action is a quasi in rem action, and that the doctrine does apply.

There is, again, a divergence of views on the nature of quiet title actions in various jurisdictions. See e.g. Nevada v. United States, 463 U.S. 110, 143-44 (1983) (noting, in dictum,

---

[7]  In the state court, Fannie Mae was represented by the same lawyer who represented Samuel I. White, P.C.

that "quiet title actions are in personam actions," but then
deciding that the quiet title action before it was "no garden
variety quiet title action" and was really in rem); 40235 Wash.
St. Corp. v. Lusardi, 976 F.2d 587, 588 (9th Cir. 1992) ("A
quiet title action is a proceeding in rem" under California
law.); Humble Oil & Ref. Co. v. Sun Oil Co., 191 F.2d 705, 718
(5th Cir. 1951) ("Suits to quiet title . . . acquire a status
that may be characterized as quasi in rem" relying on Texas law
and the common law).

     The defendants cite as dispositive the United States Court
of Appeals for the Fourth Circuit's decision in United States v.
McHan, 345 F.3d 262 (4th Cir. 2003). In McHan, the court
considered, in pertinent part, whether a criminal forfeiture
proceeding pursuant to 21 U.S.C. § 853(n) was subject to the
Seventh Amendment right to a jury trial. Id. at 265. The court
concluded that the forfeiture action was most analogous to an
"equitable petition to quiet title" for which a jury was not
generally available. Id. at 275. In rejecting the claim that the
proper analogy was to an "in rem civil forfeiture action" (which
was jury demandable), the Court of Appeals noted that the §
853(n) action was in personam. Id. at 276. In support of this
conclusion, the McHan court cited to a First Circuit decision,
Cadorette v. United States, 988 F.2d 215 (1st Cir. 1993), which
noted that an action brought under the Quiet Title Act, 28

U.S.C. § 2409a(a), was an in personam action. 988 F.2d at 223. Thus, McHan is merely persuasive to this action, as it decided a question of federal law with a reliance on other federal cases.

None of these decisions, nor any other cited by the defendants, directly addresses the issue presented here: whether, under Virginia law, a suit to quiet title is an in personam action. Similarly, the plaintiff heavily references out-of-state and federal cases to supports his contention that a quiet title action is quasi in rem, but also presents no Virginia decisions to support his position. See Pl. Supp. Mem. at 2 (relying on decisions from the Supreme Court of Connecticut, the Court of Appeals of Maryland, and the United States Court of Appeals for the Ninth Circuit).

There does not appear to be a definitive ruling by the Supreme Court of Virginia on the issue. However, in Clem v. Given's Ex'r, 55 S.E. 567 (Va. 1906), the Supreme Court of Appeals of Virginia considered, in the context of a suit for specific performance of a contract for the sale of real property against an executor who was a nonresident of Virginia, whether notice by publication was sufficient. Id. at 567. The decision affirmed the continued understanding, under Virginia law, that a defendant in a proceeding that is in rem or quasi in rem could be served with notice by publication. Id. In support of that view, the decision cites, approvingly, a number of decisions

22

that stand for the proposition that "a decree removing a cloud from or quieting titles to land within the jurisdiction may be based upon publication of summons." Id. at 568. Although principally concerned with the question of notice, Virginia's highest court held that the statute providing for publication for suits under which "title to real estate . . . shall be settled" were "quasi proceedings in rem, the object of which is to reach and dispose of property within the state." Id. at 569.

More recently, in Jones v. Priest, 79 Va. Cir. 39, 2009 WL 7388845 (2009), the Circuit Court of Fairfax County (Maxfield, J.) addressed whether service by publication provided adequate notice in a suit to quiet title, alleging that the plaintiff acquired title by adverse possession. The court noted that, under Virginia law, notice by publication is sufficient if the proceeding is in rem, and if the res is within the jurisdiction of the court. Id. at *1. The court held that "because this [i.e., the suit to quiet title] is a proceeding in rem," notice by publication was sufficient and the defendant had been properly served. Id. at *2.

Beyond the attempts to interpret the few Virginia cases that inform the analysis, the very nature of a suit to "quiet title" under Virginia law strongly suggests that it is either in rem or quasi in rem. In a suit to quiet title, a "plaintiff asks the court to declare that he has good title to the property in

23

question and compels any adverse claimant to prove a competing
ownership claim or forever be barred from asserting it." Maine
v. Adams, 672 S.E.2d 862, 866 (Va. 2009). In Virginia, a suit in
rem is one "directed against the thing or property or status of
a person and seek judgments with respect thereto as against the
world." O'Hara, 42 S.E.2d at 275. It is hard to imagine a
clearer example of a suit seeking a judgment with respect to the
status of a person in a piece of property than a suit asking the
court to declare who has good title to it. Here, Seitz actually
seeks an adjudication that he "has a claim to title to the home
that is superior to that of any other entity, including Fannie
Mae; however, his claim of title is subject to the lien of the
deed of trust." Compl. §§ 30 and 40. Under Virginia law, a claim
of that ilk presents an action quasi in rem, if not in rem.

The defendants attack the jurisdictional issue more
obliquely by arguing that the plaintiff's suit is properly
construed as a breach of contract suit rather than a suit to
quiet title. See White Opp. at 1-3; Flagstar Opp. at 11. In
support of this view, the defendants emphasize that the basis of
Seitz's suit is the claim that the defendants breached various
provisions in the deed of trust and that, as a result, the
foreclosure sale was invalid. Specifically, the plaintiff
alleges that the defendants failed to provide a proper "cure
notice," as required by the deed of trust. Compl. ¶ 13. As a

24

remedy, Seitz is asking for compensatory damages in the amount of $50,000 and an "Order quieting Seitz' [sic] title to ownership of the home, either by an Order striking the purported trustee's deed from the public land records, or by appointment of a constructive trustee with direction to execute a proper deed of conveyance of title to the home to him subject to the lien of the deed of trust." Compl. ¶ 44. The defendants argue that the emphasis that Seitz places on the compensatory damages throughout the complaint, as well as the fact that Seitz characterizes the counts of the complaint with contract-type language, suggests that this is properly considered a breach of contract complaint. White Opp. at 2; Flagstar Opp. at 12.

If Seitz's claim is quasi in rem or in rem, it does not lose that nature simply because he seeks monetary damages in addition to title to property. "Any damages that [Seitz] recover[s] . . . are incidental to the central relief requested in the complaint: possession of, and title to, the Property." Chapman, 651 F.3d at 1046. Fairly construed, Seitz is, in fact, asserting two claims under "Count One:" one against Fannie Mae to quiet title to the property in his favor and a second claim for damages against Flagstar arising out of the improper foreclosure. It is settled under Virginia law that "damages may be awarded at law after a foreclosure sale has been conducted improperly because the power of foreclosure has not accrued."

*Mathews v. PHH Mortg. Corp.*, 724 S.E.2d 196, 199 n.1 (Va. 2012). It is similarly well-settled that a trustee's "failure to observe [the] essential provisions of the deed renders the transaction [i.e., the foreclosure sale] invalid." *Preston v. Johnson*, 53 S.E. 1, 2 (Va. 1906). In his Complaint, Seitz is seeking to quiet title, subject to the deed of trust, by having the foreclosure declared invalid by virtue of violations of the deed of trust note. He also seeks ancillary damages. He would be entitled to none of the damages he seeks but for the invalid foreclosure. Thus, the prayer for damages is incidental to the central relief that he requests: the quieting of title.

For all the foregoing reasons, the Court concludes that, under Virginia law, the action that was removed to this Court should be considered either *in rem* or *quasi in rem*.

## C. Does the Prior Exclusive Jurisdiction Doctrine Apply to this Case?

Because both the pending state court action and the action removed to this Court should be considered either *in rem* or *quasi in rem*, and because neither of the parties dispute that the action still pending in the state court was commenced first, the prior exclusive jurisdiction doctrine serves to prevent this Court from exercising its jurisdiction over this action. Moreover, the *purpose* behind the doctrine also counsels in favor of remand. In *Westfeldt v. North Carolina Mining Co.*, 166 F. 706

26

(4th Cir. 1909), cert. denied, 214 U.S. 516 (1909), the Fourth
Circuit addressed a case, out of North Carolina, in which a
party filed a suit to quiet title in the Federal court while an
ejectment suit was pending in the state court. Id. at 707-08. To
be sure, the facts of the case were substantially different than
the case here, since the ejectment action was "not simply
decisive of the right to possession, but is conclusive of the
ownership of the land and determinative of the title thereto."
Id. at 707. However, in reversing the district court's decision
to assert jurisdiction, the court explained:

> In the present case there is a specific
> property in controversy, the title to which
> and the possession of which are involved. A
> principal object of the action in the state
> court was the possession of the land in
> dispute. If the federal court could, after
> commencement of the action in the state
> court, take control of the controversy and
> decide that plaintiffs in the state court
> had no title, it would be impossible
> thereafter for the state court to proceed
> with the action before it, and, if it so
> found, adjudge title in the plaintiffs and
> recovery of possession. Hence the decree in
> the Circuit Court was an injunction in terms
> and effect on appellants from proceeding
> with their litigation before the state
> court, and consequently a prohibition on the
> state court to adjudge the title to be in
> plaintiffs in the suit pending therein, or
> to take possession of that property for
> plaintiffs. The institution of the action in
> the state court looking to the taking of
> possession of the specific property in
> litigation was in effect the assertion of
> the right of control over that property. The
> action in the state court required the

> control and dominion of the property
> involved, or it was ineffective for all
> purposes. Obviously the object of the action
> in the United States court was the transfer
> to that court of the very matters that stood
> for judgment in the state court, to wit, the
> title to the lands in dispute and the right
> to its possession.

Id. at 711.

The same dilemma is present here. Flagstar and Fannie Mae are asking the state court to rule that Seitz does not have lawful possession to the property. As his defense to that claim, Seitz has raised the validity of Flagstar's title or, at least, asserts the superiority of his own title. Pl. Reply at 3. In this action, Seitz is asking the Court to find that he has superior title to the property over the defendants (subject to the deed of trust), as a result of the defective foreclosure. For either court to rule would effectively enjoin the prosecution of the cause of action in the other court.[8] The action presents the exact problem that the Fourth Circuit warned of in Westfeldt. For that reason, even beyond the technical nature of the actions (and, for that matter, in further support of finding that the two actions require shared jurisdiction over

---

[8] It is possible that this Court could find that the Flagstar has superior title and for the unlawful detainer action to go forward to adjudge the right of possession. However, given the posture of the claims, any ruling in either court would undermine the jurisdiction of the other.

28

the same _res_), the goal of the prior exclusive jurisdiction doctrine counsels that remand would be appropriate in this case.

D.   **_Colorado River_ Abstention**

In _Colorado River Water Conservation District v. United States_, 424 U.S. 800 (1976), the Supreme Court of the United States considered the scope of situations in which a federal court could decline to exercise its jurisdiction. The Court first delineated three broadly recognized categories of cases in which a federal court could decline to exercise its jurisdiction: (1) cases in which the federal question is dependent on an unresolved issue of state law, so-called _Pullman_ abstention; (2) cases that "present[] difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," so-called _Thibodaux_ abstention; and (3) in cases where "federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings," so-called _Younger_ abstention. _Colorado River_, 424 U.S. at 814-16.

To these three categories, the Court added a fourth general category of cases in which a federal court might appropriately abstain from the exercise of its jurisdiction, in the fact of a concurrent state court action: situations in which abstention is appropriate "for reasons of wise judicial administration." _Id._ at 818. The Supreme Court included in that category the "prior

exclusive jurisdiction doctrine." See id. at 818. In determining whether Colorado River abstention is appropriate, the court may consider factors such as (1) "the inconvenience of the federal forum," (2) "the desirability of avoiding piecemeal litigation," and (3) "the order in which jurisdiction was obtained by the concurrent forums." Id. at 818. The Court noted that "no one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." Id. at 818-19.

Some courts have considered the prior exclusive jurisdiction doctrine to be an example of Colorado River abstention. See e.g. Fairway Capital Corp., 483 F.3d at 40 n.2. However, Colorado River abstention is somewhat broader than this narrow doctrine as well. An analysis under Colorado River would further counsel that this Court should abstain from exercising its jurisdiction over this action. There is currently pending in the state court an action, i.e. the unlawful detainer action, which would afford the parties an adequate forum to address the issues presented in the two actions. Beyond the substantial risk of conflicting jurisdiction if the actions continued separately, there is undoubtedly a strong interest in avoiding piecemeal litigation and allowing the right to possession and the right to title to be litigated at the same time and in the same place.

Since the state action undoubtedly commenced first, it would be appropriate, under Colorado River, for this Court to abstain from exercising its jurisdiction.

**E.   Does Consolidation Present an Independent Basis for Remand?**

Seitz's original basis for remand was that the Court ought to abstain from exercising its jurisdiction because the state court had consolidated the two actions. See Pl. Reply at 4. The defendants dispute the effect of the consolidation. See e.g., Flagstar Opp. at 12. Under Virginia law, it appears that a trial court "has inherent power to order that several cases pending before it be tried together where they are the same nature, arise from the same act or transaction, involve the same or like issues, depend substantially upon the same evidence . . . and where such a trial will not prejudice the substantial rights of any party." Clark v. Kimnach, 96 S.E.2d 780, 787 (Va. 1957) (quoting Giguere v. Yellow Cab Co., 195 A. 214, 215 (R.I. 1937)). However, "the consolidation of cases for trial only does not operate as a merger of the different cases into one." Clark, 96 S.E.2d at 786. It is important to make sure that "the causes of action remain distinct throughout such a trial and every legal right is preserved to the respective parties as fully as if the cases have been tried separately." Id.

Seitz does not cite any authority for the proposition that the consolidation of cases in the present action served to

"merge" them in a manner that would prevent removal or otherwise strip this Court of jurisdiction. The consolidation order issued by the Circuit Court says nothing more than that the cases are to be consolidated and set for trial at the same time. See Pl. Mem. in Supp., Ex. A. Thus, consolidation, even under the unique facts of this case, does not warrant remand. However, the fact of consolidation certainly augurs in favor of abstention.

## CONCLUSION

For the foregoing reasons, the MOTION TO REMAND (Docket No. 19) is granted and this action will be remanded to the Circuit Court for Hanover County.

It is so ORDERED.

_____ /s/      REP          _____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 14, 2012